Argued May 30, affirmed October 22, 1979,
reconsideration denied January 17, petition
for review denied February 26, 1980 (288 Or 633)

In the Matter of Moyer, Miranda Marie,
A Minor Child,
No. 57,827
In the Matter of the Adoption
of Miranda Marie Moyer, A Minor Child,
No. D77-07-09469
In the Matter of the Adoption
of Miranda Marie Moyer, A Minor Child.
No. D77-07-10627
STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*
*v.*
MOYER,
*Appellant.*

(No. CA 12476)

In the Matter of Moyer, William,
A Minor Child,
No. 57,827
STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*
*v.*
MOYER,
*Appellant.*
(No. CA 12476)
601 P2d 821

[655]

Jana T. Gregory, Portland, argued the cause and filed the brief for appellant.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Buttler and Joseph, Judges.

THORNTON, J.

## THORNTON, J.

This is an appeal by the mother of two minor children from an order of the juvenile court terminating her parental rights. She assigns as error the court's holding that the juvenile department (the state) had jurisdiction over the older child and challenges the termination of her rights in both children.

The essential facts are as follows:
### THE MOTHER

The mother was 23 years old at the time of the hearing and had two children, Miranda, age 4, and Tony, age 2. She grew up in a middle class background but, because of feelings of isolation from her family, began running away from home when she was 12 or 13. She spent two and a half years at Hillcrest for incorrigibility. In 1972, she was convicted of second degree burglary and placed on probation. In 1974, she was convicted of two counts of forgery and sentenced to jail where she gave birth to Miranda. Prior to birth, she arranged with a friend's mother, Mrs. Stowers, to care for the child and set up a legal guardianship, which continues in effect.

In September, 1975, she was paroled to a halfway house in Portland. She escaped, and was apprehended in February, 1976. While in prison, she gave birth to Tony in July, 1976. In February, 1977, she was again paroled and lived first with her mother, then with various friends. In the fall of 1977, she was convicted of first degree theft, first degree burglary and second degree assault.[1] She is scheduled for parole in 1981.

The mother testified she had experimented with several drugs including heroin since she began running away from home, but had ceased all use since the time of her last parole. Some of her friends and her present husband have criminal records.

---

[1] The original conviction was for first degree assault but the wounds were not severe enough and her conviction was reduced to second degree assault. *State v. Moyer*, 37 Or App 477, 587 P2d 1054 (1978).

The mother's parole officer testified she was undependable and kept only intermittent contact during her second parole. During that same period, she held three jobs, two simultaneously, and lived several different places. She applied for grants which she hoped would enable her to go to community college and support her children. She was arrested before this goal was attained.

While in prison, the mother has completed two years of community college classes in preschool education and is currently taking liberal arts classes. She plans some sort of vocational training. A prison social worker and the director of social services both testified that the mother was a model prisoner who pursued her education and counseling sessions very seriously. They testified that she possesses character traits which enable change and was not likely to become a career criminal.

## THE CHILDREN

Miranda lived at Mrs. Stowers' for nine months following her birth and since that time the mother has moved Miranda to her mother's (Mrs. Trevillian) house and back to Mrs. Stowers' twice. The first move occurred in March, 1975, when the mother hoped to be paroled; instead, she was sent to a halfway house. Miranda stayed at Mrs. Trevillian's home until July, 1976, when the mother moved her back to Mrs. Stowers' home because she was concerned that Mrs. Trevillian was having drinking and emotional problems. In November, 1976, the mother learned that these problems had subsided and, hopeful of parole, had Miranda taken to Mrs. Trevallian's once again.

In February, 1977, one week after being paroled, the mother took Miranda back to Mrs. Stowers following a fight with Mrs. Trevillian in which the mother struck Mrs. Trevillian in Miranda's presence. Miranda has been at Mrs. Stowers' home ever since.

After his birth Tony was initially placed in foster care with Mrs. LaBrousse in Salem where he stayed

five months. He was taken thereafter to Mrs. Trevillian's where he has lived since under the supervision of the Children Services Division (CSD).

Miranda was described as a bright, friendly and well-adjusted child and seemed to be getting excellent care from Mrs. Stowers. By comparison, Tony was below average in development and seemed to have emotional difficulty adjusting to living with Mrs. Trevillian. The CSD caseworker testified that she felt the care was adequate for the present but that Mrs. Trevillian was not the proper parent over the long term. The mother has requested that Tony be returned to Mrs. LaBrousse's house.

Dr. Ruth Matarazzo, the psychologist who examined the children, testified that constant moves and accompanying changes of parental figure had a deleterious effect on a child's development, although the effect was not so noticeable with Miranda since Miranda knew Mrs. Stowers and had resided there constantly for a year and a half prior to Dr. Matarazzo's examination. She predicted that another transfer back to the mother's custody would have a devastating effect on Miranda, and opined that the mother was unlikely to change sufficiently to enable her to provide a healthy environment for her children. Dr. Matarazzo had not had the opportunity to question the mother nor had she attempted to explore Miranda's feelings for her mother. She felt the mother could accept and profit from parenting training but expressed an overall concern that she had made no real attempt during her two paroles to adjust her circumstances to accommodate her children, particularly in failing to seek the aid of the CSD. The evidence showed that the mother's mistrust of social agencies was a factor in many of her decisions respecting her children.

Mrs. Stowers testified that Miranda was close to her mother. While on parole, the mother visited Miranda almost every day, and during those visits, fulfilled the role of a parent. Mrs. LaBrousse testified

that the mother took good care of Tony during weekly visits at the prison and was aware of all his needs. Mrs. Trevillian stated that the mother did not visit the children at her house very often although she was unable to estimate the frequency of the visits with certainty.

### JURISDICTION

Appellant first contends that the petition is insufficient to sustain the juvenile court's finding of jurisdiction over Miranda. ORS 419.476(1) provides for jurisdiction over any juvenile:

> " * * * * *

> "(c) Whose behavior, condition or circumstances are such as to endanger his own welfare or the welfare of others; or

> " * * * * *

> "(e) Either his parents or any other person having his custody have abandoned him, failed to provide him with the support or education required by law, * * * and protection necessary for his physical, mental or emotional well-being * * *."

ORS 419.476(2) adds:

> "The court shall have jurisdiction under subsection (1) of this section even though the child is receiving adequate care from the person having his physical custody."

The petition alleges a combination of the general language of paragraphs (c) and (e) quoted above and specifically alleges the extended incarceration of the mother and the crimes of which she was convicted, failure to resume care of Miranda during her two paroles, the unlikelihood of the mother's becoming fit in the future and repeated transfers of custody. The trial judge concluded that the juvenile court had jurisdiction under either paragraph.

■ The mother has consistently argued that no jurisdiction lies under paragraph (e) in this case because Mrs. Stowers, as guardian, has legal as well as physical custody and thus, ORS 419.476(2) does not apply.

Subsection (2) was added following the decision in *Sneed v. Sneed*, 230 Or 13, 368 P2d 334 (1962), in which our Supreme Court held that a child in the actual custody of his maternal grandmother, though the mother had legal custody pursuant to a divorce decree, could not be subject to the jurisdiction of the juvenile court where the grandmother was taking adequate care of him. 230 Or at 17-18. While the present case is distinguishable from *Sneed*, we perceive no basis in the statute for holding that the existence of the legal guardianship in addition to actual custody is sufficient as a matter of law to defeat jurisdiction. The guardianship was created expressly to provide for the child while the mother was in prison and until she could establish a home. Since it will always be in the best interest of the child to have a guardian while the parent is incarcerated, the statutory standard is easily met. ORS 126.070(2). Under the circumstances here we conclude that the guardianship was insufficient to defeat jurisdiction.[2]

The petition alleged both a past failure and a present inability to provide for the care and support of the child. These allegations are sufficient, if proved, to establish jurisdiction.

Jurisdiction must be established by a preponderance of the evidence. ORS 419.500(1). While the evidence at trial was conflicting on many points, particularly between the mother and Mrs. Trevillian, it showed that the mother has never had custody of either child for more than a short time nor provided regular financial assistance. While incarceration cannot constitute abandonment which alone would justify termination of parental rights, *State v. Grady,* 231 Or 65, 67, 371 P2d 68 (1962), it provides a strong basis for juvenile court jurisdiction where it results in a child being placed in the care of a nonparent. "Failure," in the context of ORS 419.476(1)(e), must be read free of

---

[2] We do not here hold that termination of parental rights in and of itself has any legal effect on the guardianship.

any connotation of fault on the part of the mother; the inquiry focuses entirely on the child's circumstance. By being unavailable to care for Miranda, the mother "failed to provide" for her and jurisdiction is proper under ORS 419.476(1)(e).[3]

## *TERMINATION*[4]

The mother argues that the state has failed to show by a preponderance of the evidence that her rights in her two children should be terminated. ORS 419.525(2). ORS 419.523(2) provides:

> "The rights of the parent or parents may be terminated * * * if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change. * * *"

The state argues that the mother's past criminal activity, present incarceration and inadequate performance during the two parole periods are sufficient to meet the standard for termination. The detriment to the children, the state contends, results from a combination of factors: repeated incarceration which removed the mother as a resource to the child; disruption of Miranda's life by transfers of custody; the children's immediate need for a stable parental figure; the alleged lack of effort on the mother's part to adjust her conduct to circumstances during parole or permit her to take custody of her children; and the threat of future disruptions when the mother is released again.

---

[3] Because of our disposition of this issue, we need not decide whether jurisdiction was proper under ORS 419.476(1)(c).

[4] The state argues that since appellant's brief contends only that the decision on the merits was improper for want of jurisdiction, a finding of jurisdiction should dispose of this appeal. It is apparent, however, from appellant's brief and statement of questions on appeal, that the mother intended to contest the merits. Much of her argument relating to jurisdiction includes considerations material to the merits. Since specific assignments of error and argument thereon are not required in equity, we have examined the merits. Rule 7.20, Rules of Procedure, Supreme Court and Court of Appeals of the State of Oregon.

■ Our paramount concern is the welfare of the children. *State v. McMaster*, 259 Or 291, 296, 486 P2d 567 (1971). The alternative to terminating the mother's parental rights is to wait until she is released in 1981. The trial judge, who had the opportunity to observe the mother, determined that success at that time is unlikely; his observations are persuasive in this context. *State ex rel. Juv. Dept. v. Maves*, 33 Or App 411, 416, 576 P2d 826 (1978). In the meantime, the children, especially Tony, whose circumstances are not as favorable as Miranda's, remain in limbo and the likelihood of successfully integrating them into a stable family decreases as they grow older. *State v. Blum*, 1 Or App 409, 416, 463 P2d 367 (1970). We conclude that the trial court correctly terminated this mother's parental rights.

Affirmed.