857 P.2d 888 (1993)
122 Or. App. 371
In the Matter of Sean Allen Davis, a Child.
STATE ex rel. CHILDREN'S SERVICES DIVISION, Respondent,
v.
Judy Lynn CAMPBELL, Appellant.
J-7323; CA A77533.
Court of Appeals of Oregon.
Argued and Submitted April 5, 1993.
Decided August 18, 1993.
Reconsideration Denied October 13, 1993.
Kevin M. McCallie, McMinnville, argued the cause and filed the brief for appellant.
Michael C. Livingston, Asst. Atty. Gen., Salem, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Atty. Gen., and Virginia L. Linder, Sol. Gen., Salem.
Before DEITS, P.J., and RIGGS and DURHAM, JJ.
RIGGS, Judge.
Mother appeals an order terminating her parental rights pursuant to ORS 419.523 and the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 et seq. We affirm.
Mother is an enrolled member of the Iowa Tribe of Kansas-Nebraska (Tribe). Child was born on August 19, 1991. On August 22, 1991, the Yamhill County Juvenile Department filed a petition with the juvenile court to terminate mother's parental rights. On that same date, the court granted Children's Services Division (CSD) temporary custody of the child. Mother has a schizoid personality disorder and a history of alcohol dependence. Because she also suffers from a severe seizure disorder, she requires a 24-hour caregiver. Both of her other children have been removed from her care due to life threatening endangerment. Child was placed with his maternal aunt who also has custody of child's sister. Pursuant to the ICWA, CSD *889 notified the Tribe of the hearing to terminate parental rights but the Tribe declined to intervene. Mother's parental rights were terminated.
At oral argument on appeal, the state notified this court that it had recently discovered that a petition seeking jurisdiction of child was pending at the time mother's parental rights were terminated. There is, therefore, a question whether the court had authority to terminate mother's rights. Because the issue was not raised below, we gave the parties leave to respond.
The issue of jurisdiction may be raised at any time and is not waived. Comley v. State Bd. of Higher Ed., 35 Or.App. 465, 468 n. 3, 582 P.2d 443 (1978). ORS 419.482 provides, in relevant part:
"(1) Any person may file a petition in the juvenile court alleging that a child named therein is within the jurisdiction of the court as provided in ORS 419.476(1).[1]
"* * * * *
"(3) At any time after a petition is filed, the court may make an order providing for temporary custody of the child."
ORS 419.482 does not require that the juvenile court make a separate ruling accepting jurisdiction before it grants temporary custody of the child. It simply states that after the petition is filed, the court can grant temporary custody. We do not condone courts' failing to rule on jurisdictional petitions before terminating parental rights.[2] However, in this case, it is clearly established that the court assumed jurisdiction of the child when it granted CSD temporary custody.
Mother assigns error to the use of expert witnesses who had no specific knowledge of Indian culture. We review de novo. See State ex rel. Juv. Dept. v. Tucker, 76 Or.App. 673, 710 P.2d 793 (1985), rev. den. 300 Or. 605 (1986). The ICWA provides:
"No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or the Indian custodian is likely to result in serious emotional or physical damage to the child." 25 USC § 1912(f). (Emphasis supplied.)
Mother argues that State ex rel. Juv. Dept. v. Charles, 70 Or.App. 10, 688 P.2d 1354 (1984) rev. dismissed 299 Or. 341, 701 P.2d 1052 (1985), controls. We disagree. In Charles, which involved cultural bias, we said that a "qualified expert witness" must possess special knowledge of social and cultural aspects of Indian life. 70 Or.App. at 16 n. 3, 688 P.2d 1354.[3]
In State ex rel. Juv. Dept. v. Tucker, supra, we clarified and distinguished our holding in Charles: "[W]hen cultural bias is clearly not implicated, the necessary proof may be provided by expert witnesses who do not possess special knowledge of Indian life." 76 Or.App. at 683, 710 P.2d 793. The issue in Charles was cultural bias. The termination of parental rights in *890 Tucker, as in this case, was due to the mother's mental illness. Here, the state has presented evidence beyond a reasonable doubt that mother's emotional illness, mental deficiency, neurological disorders, and failure to adjust to these conditions, combined to leave her incapable of parenting for extended periods of time. Mother presented no evidence or witnesses to refute those claims or to show that the issue was cultural bias rather than her mental illness. We conclude that continued custody by mother would likely result in serious damage to the child. That ruling is consistent with the evidence and with 25 U.S.C. § 1901, et seq.
The other arguments do not merit discussion.
Affirmed.
NOTES
[1] ORS 419.476(1) provides, in relevant part:

"The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age * * *."
[2] The grounds for juvenile court jurisdiction and termination may be alleged and established in the same proceeding. See State ex rel. Juv. Dept. v. Moyer, 42 Or.App. 655, 601 P.2d 821 (1979), rev. den. 288 Or. 633 (1980).
[3] According to the House Report, the purpose of the "qualified expert witness" provision in the ICWA is to avoid problems with cultural bias:

"The courts tend to rely on the testimony of social workers who often lack the training and the insights necessary to measure the emotional risk the child is running at home. * * * Rejecting the notion that poverty and cultural differences constitute social deprivation and psychological abuse, the Association argues that the State must prove that there is actual physical or emotional harm resulting from the acts of the parents." H.R. 1386, 95 Cong.2d Sess. 10.
In Charles, the state presented as witnesses two social workers who had no special knowledge of Indian culture. The mother's expert witness was a board-certified psychiatrist and had been a consultant to the Urban Indian Council.