Argued July 20, remanded November 5, 1971 for entry of an order
in accordance with this opinion

JACKSON, *Respondent, v.* STATE ACCIDENT
INSURANCE FUND, *Appellant,* R. VEAL
& SON, *Employer-Respondent.*
490 P2d 507

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

*C. S. Emmons,* Albany, argued the cause for respondent Leon Jackson. With him on the brief were Richard T. Kropp and Emmons, Kyle, Kropp & Kryger, Albany.

*Roger Warren,* Portland, argued the cause for employer-respondent R. Veal & Son.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

SCHWAB, C. J.

This is an appeal by the State Accident Insurance Fund from a judgment order of the circuit court reversing an order of the Workmen's Compensation Board and reinstating the order of the hearing officer which:

(1) Imposed a penalty upon the Fund and in favor of the claimant for unilaterally terminating temporary total disability payments previously being paid by the Fund;

(2) Directed the Fund to continue the payment of temporary total disability benefits; and

(3) Awarded attorney fees to the claimant.

This litigation actually arises out of a controversy between two insurance carriers, the Fund and Employers Insurance of Wausau, hereafter called Wausau.

The Fund contends that the trial court erred in each instance.[1]

There are two basic questions involved in this appeal.

(1) Does an insurance carrier, including the Fund, or a direct responsibility employer have the right to unilaterally terminate without hearing tem-

---

[1] No issue is raised as to the amount of the penalty or the attorney's fees awarded.

porary total disability payments being made pursuant to an accepted claim?

(2) When a claimant is temporarily totally disabled following two injuries, for each of which different employers are responsible, and each of which injuries was in itself sufficient to cause total disability, may the Board pro-rate the temporary disability payments between the two employers?

Our answer to question (1) is, "no," and to question (2), is "yes."

Claimant sustained an injury to his low back November 28, 1966, when he was employed by a direct responsibility employer insured by Wausau. On November 21, 1968, the claim was closed because his condition appeared to be medically stationary. A permanent partial award was made and the claimant filed a request for a hearing December 2, 1968.

Claimant subsequently began to work for a different employer, the Corvallis Hotel. On January 15, 1969, he sustained an injury to his neck. His claim was accepted and he began receiving temporary total disability compensation from the Fund, which insured the hotel.

During the time that he was receiving these temporary total disability benefits as a result of the neck injury, claimant underwent low back surgery for aggravated conditions arising out of the 1966 injury. Wausau paid the cost of this surgery and other medical care. In addition, Wausau and claimant entered into an agreement that Wausau would pay claimant the difference between the temporary total disability payments claimant was receiving from the Fund at the time and what he would have received from Wau-

sau. The increased amount was based on the higher salary that claimant had earned on his former job and brought the weekly payments to approximately $45, of which $5 was paid by Wausau and $40 by the Fund. This agreement was approved by a hearing officer on April 24, 1969.

The agreement was executed without the knowledge of the Fund. The Fund learned about claimant's operation and the temporary total disability payments during the first part of May. It assumed that claimant was receiving double payments and unilaterally suspended all payments as of April 30, 1969. On June 9, 1969, the Fund requested the Compliance Division of the Workmen's Compensation Board to authorize the suspension of payment of temporary total disability compensation retroactively, effective to the date of the unrelated surgery, April 24, 1969. The suspension was authorized on June 10, 1969. Wausau then began to pay the additional amount to claimant, designating it as a loan. Claimant sought a hearing after the Fund stopped paying benefits.

The Fund asked the hearing officer to join Wausau as a necessary party so that there could be a complete and final determination between the two insurers and the claimant. He did, and Wausau appeared at the hearing which was held October 2, 1969.

The insurers admitted that either injury alone would entitle the claimant to temporary total disability benefits. Claimant considered the issue of the hearing to be whether the Fund had arbitrarily stopped payment. The Fund felt that Wausau was responsible for all the temporary total disability payments because one of the doctors consulted by the claimant had diagnosed the back injury as more de-

bilitating than the neck injury. The Fund argued that Wausau's obligation related back to the date of the first injury and urged the hearing officer to apply ORS 656.222.[8] The portion of that statute which deals with temporary disability requires the claimant to be receiving temporary disability at the time of the subsequent injury. Since the back injury claim was closed at the time the neck injury occurred, the hearing officer was correct in concluding that the facts here did not come within that statute.

The hearing officer found the issue to be as stated by the claimant and interpreted a prior Workmen's Compensation Board decision, Arnold, Claimant, W.C.B. Case #68-928, to mean that temporary total disability could be terminated in only three ways: the claimant's return to his regular work; a release by claimant's doctor that he could return to regular work; or upon hearing on a request by the employer for a determination pursuant to ORS 656.268 that claimant's condition was medically stationary. He further ruled that the Compliance Division had no statutory power to authorize the Fund to suspend payments and that its authorization to so do was null and void. The hearing officer ordered the Fund to resume full temporary total disability benefits and assessed attorney's fees and a penalty of 25 per cent of the money owed to claimant under the correct rate.[9]

---

[8] ORS 656.222 provides:

"Should a further accident occur to a workman who is receiving compensation for a temporary disability, or who has been paid or awarded compensation for a permanent disability, his award of compensation for such further accident shall be made with regard to the combined effect of his injuries and his past receipt of money for such disabilities."

[9] The amount of future payments was reduced because the claimant had misrepresented his marital status. He filed his claim

The Fund appealed to the Workmen's Compensation Board. The Board reversed that portion of the order of the hearing officer that imposed a penalty and attorney's fees. The Board ordered Wausau and the Fund to each pay 50 per cent of the amount due under the correct January rate on the ground that each insurer was responsible for an injury that resulted in temporary total disability. Wausau was to continue the additional payments provided for in the agreement between claimant and Wausau.

The claimant and Wausau appealed from the Workmen's Compensation Board to the circuit court which reversed the Board's order on review and reinstated the order of the hearing officer.

The first issue is whether the Fund could unilaterally stop paying temporary total disability. The Workmen's Compensation Law protects the workman against arbitrary suspension of payments by an employer. Once the employer accepts a claim, he must pay "periodically, promptly and directly." ORS 656.262(2).

■■ Temporary disability payments ordinarily continue until the workman returns to regular work, is released by his doctor to return to regular work, or there has been a determination that the workman's condition is medically stationary under ORS 656.268. If a workman disagrees with the finding that he is medically stationary, he has the right to request a hearing. ORS 656.268(4). While the *Arnold* case, cited and relied on by the hearing officer sets out the usual

---

as a married man with two dependents, when, in fact, he was single on January 15, 1969, the date of the neck injury. The overpayments were credited to the Fund when the penalty was figured.

circumstances for termination, there may be other situations where an employer will want to stop payments. An employer cannot suspend benefits on his own motion, but he always has the right to request a hearing under ORS 656.283(1) which provides:

> "Subject to ORS 656.319, any party or the board may at any time request a hearing on any question concerning a claim."

This course of action would have given the claimant the right to be heard and would have dispelled the Fund's misunderstanding that the claimant was receiving double payments.

Under ORS 656.262(8), a penalty is proper "[i]f the fund * * * unreasonably * * * refuses to pay compensation * * *." The unilateral suspension of payments was unreasonable. The Fund made no effort to seek termination under the appropriate statutes, and did not try to verify the report of double payments.

■■ Attorney's fees may be awarded in workmen's compensation cases under ORS 656.382(1)[4] when the Fund (or a direct responsibility employer) unreasonably resists the payment of the compensation.

We turn now to the remaining issue. As a result of this case, the Workmen's Compensation Board, as an addendum to its order in this case, announced a policy that will apply to future disputes where a claimant has a fixed right to compensation but there are conflicting claims between insurers. The

[4] ORS 656.382(1) provides:

"If a direct responsibility employer or the State Accident Insurance Fund refuses to pay compensation due under an order of a hearing officer, board or court, or otherwise unreasonably resists the payment of compensation, the employer

Board order "adopted" ORS 656.307.⑨ We interpret "adopted" to mean that the Board will follow the procedure provided in ORS 656.307.

■ Under the unique facts of this case, the claimant sustained two separate injuries, each of which resulted in temporary total disability, covered by different insurers. The Workmen's Compensation Law establishes the amounts payable for temporary total disability in ORS 656.210. The statute not only sets out how much the employer has to pay, but it also sets out how much the workman can receive. ORS 656.210 provides:

> "When the total disability is only temporary, the workman shall receive during the period of that total disability compensation equal to 66-2/3 percent of wages, but not less than $30 a week. However, in no event shall it exceed the lesser of 90 percent of wages or an amount per week determined as follows:
>
> "(a) If the workman is unmarried at the time of the injury * * * $60 a week.
>
> "* * * * *."

---

or fund shall pay to the claimant or his attorney a reasonable attorney's fee as provided in subsection (2) of this section. To the extent a contributing employer has caused the fund to be charged such fees, such employer may be charged with those fees."

⑨ ORS 656.307 provides:
"Where there is uncertainty as to which of several subject employers, one of which is a direct responsibility employer, is the true employer of a claimant workman, the board shall, by order, designate who shall pay the claim, if the claim is otherwise compensable. Payments shall begin within 30 days after the board has been notified of the accident. When a determination of the true employer or employers has been made, the board shall direct any necessary monetary adjustment between the parties involved. Any failure to obtain reimbursement from a direct responsibility employer shall be recovered from the Direct Responsibility Employers Adjustment Reserve."

ORS 656.726, in pertinent part, charges the Board with general supervision, regulation and enforcement of the workmen's compensation laws and authorizes the Board to make and declare rules and regulations reasonably required in the performance of its duties. In the unique situation at bar, in order to meet the requirements of ORS 656.210, the Board had three alternatives: (1) it could order Wausau to pay the entire amount of temporary total disability; (2) it could order the Fund to pay the entire amount; or (3) it could reduce the amount owed by each insurer to 50 per cent of the statutorily allowable total for the period that both injuries were subject to pending claims and each of the two in itself created a condition of temporary total disability. It correctly chose to order a pro-rate between insurance carriers.[*]

■ The Board's order failed to specify when the pro rata contributions should begin. The claimant's neck injury prevented his return to work during the period between his fall at the Corvallis Hotel and the elective back surgery on April 24, 1969. Wausau became equally liable for claimant's temporary total disability as of the date of the surgery.

Remanded for entry of an order in accordance with this opinion.

---

[*] This case does not involve an apportionment under the circumstances such as was sought in Cutright v. Amer. Ship Dismantler, 6 Or App 62, 486 P2d 591 (1971). There we held there was no basis for apportionment between two successive insurers when the claimant suffered a compensable injury which aggravated a residual disability caused by a previous compensable injury.