Argued May 23, remanded August 1, 1978

GILROY, *Respondent—Cross-Appellant,*
STATE ACCIDENT INSURANCE FUND,
*Respondent,*
*v.*
GENERAL DISTRIBUTORS, *Appellant.*
(No. A7708-12152, WCB Nos. 76-2678 and 76-2679,
CA 9699)
582 P2d 428

Daryll E. Klein, Portland, argued the cause and filed the brief for appellant.

Lawrence J. Hall, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Sidney A. Galton, Portland, argued the cause for respondent—cross-appellant. With him on the brief was Galton, Popick & Scott, Portland.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

This worker's compensation appeal presents two issues: (1) did the claimant suffer a new injury or an aggravation of a March, 1974, injury or both; and (2) was the claimant entitled to an award of a penalty and attorney fees because of the failure of his employer's current insurer to pay him compensation or deny the claim within 14 days of the employer's receipt of notice or knowledge of claimant's claim?

I

Claimant injured his right shoulder while playing football in November, 1973. He again injured his shoulder at work at General Distributors in March, 1974, when an empty beer keg fell and struck him in the shoulder area. This claim was closed by the State Accident Insurance Fund (SAIF) in August, 1974, without any award of permanent partial disability. Claimant's injury was diagnosed as a mild sprain of the supraspinous ligament of the thoracolumbar junction area. One of the claimant's treating physicians made the following prognosis in July, 1974:

"It is my impression that the patient is stable post shoulder injuries [*sic*]. I would anticipate a good prognosis with no further difficulty, however, we must keep in mind that a history of shoulder dislocation is associated with sufficiently high increase second and third dislocations occasionally resulting in repairs for recurrent dislocating shoulders. I think that this injury has predisposed him to a second dislocation and would consider [future] dislocations with minimal trauma as related to this initial injury."

Claimant experienced repeated episodes of shoulder dislocation subsequent to March, 1974. He stated at the hearing that between March, 1974, and April, 1976, his shoulder dislocated occasionally when he lifted kegs of beer, threw a baseball or even extended his arm. On April 20, 1976, claimant stopped at the scene of an automobile accident to render assistance. He became involved in an altercation with one of the individuals involved and struck him with his right

hand. Subsequently, his right arm became numb and sore. On the morning of April 21, 1976, claimant tripped while ascending a flight of stairs at work at General Distributors. General Distributors' insurer was now the EBI Company (EBI), it having replaced SAIF sometime between 1974 and 1976. Claimant stated that he braced himself with his right arm as he fell in order to break his fall. He said he suffered immediately from "severe numbness, a great deal more pain than when I had suffered with previous episodes with my shoulder."

He also stated:
> "Well, on the 21st was the first time I noticed the swelling after any of the incidents, my fingers were swollen, visibly swollen, and this is the first time that had happened, after the 21st, so that's, you know, part of the reason I decided to see a doctor, I was in more pain than normal and my fingers were starting to swell. This hadn't happened in the past."

Claimant's treating physician stated that the claimant had suffered an interior dislocation of the right glonohumeral joint and ultimately performed corrective surgery on the claimant in May, 1976. The treating physician stated that his present shoulder dislocation was primarily due to the initial trauma which caused the shoulder to dislocate in March, 1974:

> "Q What is the primary reason or the precipitating reason for this thing progressing to a chronic thing and the need for the surgery, what —
> "A It's very hard to say. I think it may well be due to the initial trauma that he sustained, which caused the shoulder to dislocate.
> "Q That was the one in March of '74?
> "A Yes.
> "Q And then this is something that progressed as it went along through time and this type of thing?
> "A Yes."

However, the physician also indicated that claimant's fall of April 21, 1976, "crystalized" his shoulder problem and did contribute to his disabling condition:

"Q [Claimant's counsel] I have one other question. Subsequent to the incident of the so-called scuffle incident, which was the day before Mr. Gilroy fell at work, after that his testimony at the hearing was that his shoulder was sore, but that it was relocatable and was relocated, and that he was not going to seek any medical care and treatment. He then treated that once he fell on the steps at work?

"A Yes.

"Q His shoulder severely pained him and he was unable to continue and, in fact, he did not go out that day as scheduled. Can you say, on the basis of this information, and the medical history that you have, and all the other facts that have been presented to you, can you say whether or not the fall at work contributed even slightly either to his disability or to his need for surgery?

"A I think, judging from his history, I, of course, not being there to verify the information myself, and subsequent limitation, but I think by his history he probably did spontaneously, or he did redislocate his shoulder.

"Q Does that mean that the fall did or did not, as far as you can tell, based upon the history, obviously, and the other factors, contribute at least slightly to the disability or the need for surgery?

"A *I think it did, probably, yes.*" (Emphasis supplied.)

The physician's conclusion that the claimant's fall did contribute to his disabling condition was also indicated in the following exchange between the physician and the SAIF attorney:

"Q Assuming that, I believe his testimony was that he did extend his shoulder out in front of him—

"A That's the classic maneuver described in all textbooks of fracture surgery, and dislocated shoulders. It's the usual mechanism that happens. Someone runs, falls, an outstretched hand, and dislocated shoulder.

"Q Would that kind of injury cause permanent damage?

"A Yes, it could.

"Q Do you think it possibly did in this case?

"A I think he already had permanent damage.

[ 365 ]

"Q  Do you think it caused additional permanent damage?
"A  It's likely that it did."

On June 14, 1976, EBI denied claimant's new injury claim arising out of the April 21, 1976, fall. SAIF denied claimant's aggravation claim on June 24, 1976. The referee found that claimant had sustained *both* a new injury and an aggravation but that primary responsibility for claimant's condition rested with SAIF until the claim was closed. Subsequent to that time, the referee held, the disability award was to be apportioned between SAIF and EBI in a manner to be determined by the Evaluation Division. The Workers' Compensation Board reversed the referee and ordered that EBI assume responsibility for claimant's condition on the ground that he had suffered a new injury. EBI appealed to the circuit court which affirmed the Board's order.

■  Employer appeals, contending that the Board and the circuit court erred in finding claimant had suffered a new injury. In *Smith v. Ed's Pancake House,* 27 Or App 361, 364, 556 P2d 158 (1976), we restated the rule applicable to successive injury cases:

" 'The "last injurious exposure". rule in successive-injury cases places full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability.

" 'If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. In this class would fall most of the cases discussed in the section on range of consequences in which a second injury occurred as the direct result of the first, as when claimant falls because of crutches which his first injury requires him to use. This group also includes the kind of case in which a man has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a

second period of disability precipitated by some lift or exertion.

" 'On the other hand, if the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributed the major part to the final condition. This is consistent with the general principle of the compensability of the aggravation of a preexisting condition.' " (*Quoting* 4 Larson, Workmen's Compensation Law 17-71—17-78, § 95.12 (1976).)

The medical testimony in this case demonstrates that claimant's fall of April 21, 1976, although not the sole contributing factor to his disabling condition, did independently contribute to that condition. Thus, claimant's condition is to be regarded as a new injury, the costs of which must be borne solely by EBI.

Claimant argues on cross-appeal that the Board erred in finding that claimant had suffered only a new injury. He contends that the evidence supports a finding that he sustained *both* a new injury and an aggravation of his previous injury and that he is entitled to compensation for both. He apparently relies on the concurring opinion in *Blair v. SAIF,* 21 Or App 229, 534 P2d 523 (1975), which states:

"In substance we here have a situation in which a claimant has had two separate compensable injuries and is entitled to prove the extent of his claims on each. The fact that claimant incurred successive injuries to the same general area of his body and which are difficult to segregate cannot operate to deprive him of the right to seek compensation for both injuries." 21 Or App at 238.

However, this is not such a case. The evidence establishes that the claimant's fall of April 21, 1976, materially exacerbated a single preexisting condition, thus making that deteriorated condition the basis of a new injury for compensation purposes. Claimant's injuries involved not just the same general area of his body but, in fact, the identical area of his body.

[ 367 ]

## II

Claimant also contends on cross-appeal that he was entitled to an award of a penalty and attorney fees from EBI because of its failure to pay him compensation or deny his claim within 14 days of the employer's receipt of notice of claimant's injury. Claimant contends that this award should be based on the interim compensation due him from EBI from April 21, 1976, to June 14, 1976, the date of EBI's denial of his claim.

Claimant was injured on April 21, 1976, and did not return to work thereafter: He telephoned EBI a day or two later and requested that his claim of March, 1974, be *reopened.* An EBI employe advised him that EBI did not carry the employer's workers' compensation coverage at that time and advised him to contact SAIF. The claimant did so several times but was unsuccessful in convincing SAIF to take any action on his claim. On May 25, 1976, after having surgery on his right shoulder, claimant signed and gave to his employer Workers' Compensation Board Claim Form 801 by which time he informed his employer that he was making a claim for a new injury. On June 3, 1976, claimant's treating physician sent a letter to SAIF advising it to reopen claimant's claim of March, 1974. On June 4, 1976, claimant's attorney sent a letter to both EBI and SAIF requesting that they each pay claimant time-loss benefits from April 21, 1976. On June 10, 1976, SAIF received medical and surgical reports from the claimant's physician. On June 17, 1976, SAIF sent a letter to claimant's attorney mistakenly advising him that no medical reports for claimant's aggravation claim had been received. On June 14, 1976, EBI denied claimant's new injury claim. On June 21, 1976, claimant's attorney mailed a copy of the aforementioned medical reports to SAIF. SAIF then proceeded to deny claimant's aggravation claim on June 24, 1976. Finally, on July 6, 1976, claimant received a check from EBI for time-loss compensation for the period May 25, 1976, to June 11, 1976.

After finding that claimant had suffered a new injury to be compensated by EBI, the circuit court: (1) ordered EBI to pay all time-loss compensation due claimant from April 21, 1976, and claimant's attorney fees for appeal of the Board order to the circuit court; and (2) ordered SAIF to pay a 25 percent penalty and attorney fees on the time-loss compensation due claimant from April 21, 1976, to June 24, 1976, for unreasonably resisting the payment of compensation. The court, in order to avoid a double recovery to the claimant, did not order SAIF to make the time-loss compensation payments. SAIF appears as a respondent only and, although it might well have done so, does not ask that we reverse the order of the circuit court assessing a penalty and attorney fees against it.

■ ORS 656.262 sets out the duties of an insurer in a case such as this:

"* * * * *

"(4) The first instalment of compensation shall be paid no later than the 14th day after the subject employer has notice or knowledge of the claim. Thereafter, compensation shall be paid at least once each two weeks, except where the director determines that payment in instalments should be made at some other interval. The director may by regulation convert monthly benefit schedules to weekly or other periodic schedules.

"(5) Written notice of acceptance or denial of the claim shall be furnished to the claimant by the fund or direct responsibility employer within 60 days after the employer has notice or knowledge of the claim. The fund shall also furnish the contributing employer a copy of the notice of acceptance. The notice of acceptance shall:

"(a) Advise the claimant whether the claim is considered disabling or nondisabling.

"(b) Inform the claimant of hearing and aggravation rights concerning nondisabling injuries including the right to object to a decision that his injury is nondisabling by requesting a determination thereon pursuant to ORS 656.268.

"* * * * *

> "(8) If the fund or direct responsibility employer or its insurer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the fund or direct responsibility employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382.
> "* * * * *."

As far as EBI is concerned, it received notice of claimant's claim of a new injury on May 25, 1976, the date that the claimant filed Form 801 with his employer. EBI did not deny claimant's new injury claim until June 14, 1976. ORS 656.262(4) requires EBI either to make its first time-loss compensation payment within 14 days of such notice or to deny claimant's claim within that period. *See Jones v. Emanuel Hospital,* 280 Or 147, 151, 570 P2d 70 (1977). EBI did not pay claimant time-loss compensation until July 6, 1976—over 25 days after it was due—and such unexcused delay therefore makes it liable for an award of a penalty and attorney fees under ORS 656.262(8) for unreasonably delaying payment of compensation, as employer's attorney admitted at the hearing before the referee:

> "* * * [W]e admit that time loss should have been paid prior to the denial, we were in error in not doing that. We subsequently went back and picked up and paid time loss from May 26 to June 11 * * *."

The July 6, 1976, payment from EBI to claimant was incorrect in that it should have covered the claimant's time-loss compensation from the date of his injury (April 21, 1976) rather than from the date that such injury was reported to claimant's employer (May 25, 1976). Under the circumstances, we think it adequate that EBI be assessed a 10 percent penalty and $250 in attorney fees for its unreasonable delay in paying time-loss compensation due claimant for the period from April 21, 1976, to June 14, 1976, the date that EBI denied claimant's new injury claim.

Remanded to the Workers' Compensation Board for computation of penalty amounts.