Argued and submitted July 22, reversed and remanded with instructions to reinstate the referee's order November 23, 1981, petitioner's reconsideration allowed, former opinion (55 Or App 820, 639 P2d 718) adhered to as modified February 2, respondent Wausau's reconsideration of reconsideration allowed, former opinion (55 Or App 820, 639 P2d 718) adhered to as modified, former per curiam opinion (57 Or App 23, 643 P2d 1290) withdrawn April 26, petition for review denied July 13, 1982 (293 Or 373); respondent Dale Scofield's petition for attorney fees allowed March 1, 1982 (56 Or App 130, 641 P2d 1131)

In the Matter of the Compensation
of Dale Scofield, Claimant.

## NATIONAL FARMERS' UNION INSURANCE,

*Petitioner,*

*v.*

## SCOFIELD et al,

*Respondents.*

(WCB 78-3310, 78-7638, CA A20339)

636 P2d 970

Brian L. Pocock, Eugene, argued the cause for petitioner. With him on the brief was Cowling, Heysell & Pocock, Eugene.

Martin J. McKeown, Eugene, argued the cause and filed the brief for respondent Dale Scofield.

Frank A. Moscato, Portland, argued the cause for respondent Employers Insurance of Wausau. With him on the brief was Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

No appearance for respondent State Accident Insurance Fund Corporation.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

VAN HOOMISSEN, J., dissenting opinion.

## THORNTON, J.

This appeal involves a dispute among three insurance carriers as to which is liable on a workers' compensation claim involving one employer, Lane Electric Cooperative, and two successive injuries. The sole issue presented by National Farmers' on this appeal is whether claimant's condition is the responsibility of Wausau or National Farmers'. The referee ruled that claimant's need for medical services and other compensation after May 23, 1977, stemmed from an injury on August 27, 1974, while Wausau was on the risk. Wausau then appealed to the Workers' Compensation Board. The Board reversed the referee and held that National Farmers' was liable, taking the view that an incident which occurred in 1977, involving claimant's lifting of a portable yard light, rather than the 1974 incident, was the source of the compensable injury and that, therefore, National Farmers' was the responsible carrier.

Claimant sustained a compensable low back injury working in October, 1973, when SAIF was on the risk. The claim was accepted. Claimant experienced no significant symptoms after the 1973 injury until August 27, 1974, when he again injured his low back while pulling an electric line. At that time Wausau was on the risk. Claimant testified that he filled out the employer's standard accident form after the 1974 incident and mailed it to the employer with his time sheet. The company records do not, however, contain this form or any record of it. There is, therefore, an issue between Wausau and the claimant whether the 1974 claim is barred because of late notice. Claimant was treated for that injury by Dr. Erpelding, his family physician, and by Dr. Collis but the claim was never processed.

On May 23, 1977, claimant experienced the low back difficulty mentioned above after lifting the portable yard light. Claimant saw Dr. Collis following this incident, although the appointment had been made previously for his continuing back problem dating back to the 1974 injury. On May 24, 1977, claimant executed a claim form, reporting that he had strained his back on May 23. General Adjustment Bureau (GAB) provided claim service to

National Farmers'. GAB denied National Farmers' responsibility for this latest incident and for claimant's continuing need for medical treatment on the ground that they were related to his industrial injury of August, 1974, before National Farmers' insured the employer. Wausau in turn denied responsibility on the ground that claimant's problems resulted from the 1977 incident rather than the August 27, 1974 incident.

Dr. Hirons examined and treated claimant from June 18 to August 1, 1977. On June 18, 1977, Dr. Hirons causally related a condition he diagnosed as "sciatica" to the August 27, 1974, industrial injury when pulling the wire. But on March 27, 1978, Dr. Hirons reported:

"In reviewing the chart of Mr. Scofield, it would be consistent to say that this man had an injury occurring in 1974 and that he has had discomfort off and on since, and that he has some aggravation of this injury leading to his visits with us starting in June 1977, and going on from there."

On May 23, 1978, claimant was required to undergo surgery for his back condition.

Claimant requested a hearing on the denials. SAIF was joined as a necessary party to the proceedings. At the hearing Wausau raised the issue of the timeliness of claimant's claim. The referee found that claimant sustained a compensable injury on August 27, 1974, and that his claim was not barred by reason of untimely filing and remanded the claim to Wausau. Wausau sought Board review. The Board reversed the referee's order, upholding Wausau's denial, and remanded the claim to National Farmers'. National Farmers' appeals to this court.

■ A threshold issue is raised by Wausau, asserting that National Farmers' appeal should not be considered because of its failure to follow Rules of Appellate Procedure 7.17(f) and 7.19 in not making assignments of error and by failing to set out verbatim the pertinent portions of the record to be reviewed.[1] Because our review in workers'

---

[1] RAP 7.17(f):

"The appellate's brief shall open with a clear and concise statement of the case which shall set forth in the following order under separate headings:

compensation cases is *de novo,* assignments of error, while desirable and extremely helpful, are not required. *See Patterson and Patterson,* 286 Or 631, 596 P2d 554 (1979); *State ex rel Juv. Dept. v. Moyer,* 42 Or App 655, 601 P2d 821 (1979), *rev den* 288 Or 633 (1980). As already noted, the sole issue is whether claimant's condition is the responsibility of Wausau or National Farmers'. Under these circumstances we find no violation of the cited provisions of our rules.

■　　We now turn to the merits, and, based on our *de novo* review of the record, we agree with the referee that SAIF has no responsibility or obligation with respect to claimant's claim for his disabling back condition. The claim accepted by SAIF was a non-disabling compensable injury, which required the payment of medical benefits only, and has no relevance to this case.

Next, we conclude that claimant has proven by a preponderance of the evidence that his claim for his disabling back condition which required surgery in 1978 is a compensable claim against Wausau, employer's insurer in 1974. *See Calder v. Hughes & Ladd,* 23 Or App 66, 541 P2d 152 (1975). Also, claimant's testimony, supported by the

---

"'* * * * *

"(f) Any other matters necessary to inform the court concerning the questions and contentions raised on the appeal, insofar as such matters are a part of the record, with reference to the portions of the record where such matters appear.

RAP 7.19:

"Each assignment of error shall be clearly and succinctly stated under a separate and appropriate heading. The assignment of error must be specific and must set out verbatim the pertinent portions of the record.

"The arrangement and wording of assignments of error, so far as applicable, together with reference to pages of the transcript or narrative statement, shall conform to the illustrations in Appendix F.

"Where several assignments of error present essentially the same legal question, they shall be combined so far as practicable.

"In the court's discretion, alleged errors of the trial court will not be considered on appeal unless regularly assigned as error in the appellant's or cross-appellant's opening brief, except that the appellate court may take notice of errors of law apparent on the face of the record. Similarly, assignments of error which the court can consider only by searching the record for the proceedings complained of will not be considered and a brief not complying with the rules may be stricken."·

testimony of his son, showed the fact of the accident in 1974 and also established chronic symptoms following that accident. Claimant's testimony, supported by the testimony of Mr. Newland, employer's office manager, established the fact that claimant's chronic symptoms worsened with the passage of time from August 27, 1974, to May 22, 1977, the day preceding the May 23, 1977, incident. Claimant's testimony in this regard is also medically confirmed. He was examined and treated by Dr. Collis on December 1, 1976, and made a return appointment to see Dr. Collis on May 24, 1977, without regard to the then unknown May 23, 1977, incident. Also, during late 1976 or early 1977, claimant inquired of Mr. Newland about the status of the claim which arose out of the 1974 event, because his condition was worsening and because he wanted to know who would be responsible for continued medical treatment.

Wausau places great reliance on a statement in an opinion expressed by Dr. Serbu, the neurosurgeon who performed the laminectomy in 1978. In its brief, Wausau states:

"Claimant was referred to a neurosurgeon, Dr. John Serbu, on August 17, 1977. Dr. Serbu examined and treated Claimant several times over the next two years. Initially, Claimant did not report the May, 1977 injury and Dr. Serbu was of the opinion that Claimant's problem was related to either the 1951 laminectomy[2] or the 1974 injury. But on May 15, 1978 when Dr. Serbu was informed of the 1977 injury, he concluded, on the assumption that the incident had in fact occurred, that 'obviously one would have to relate his present symptomatology more to the 1977 injury rather than the 1974 injury.'"

Dr. Serbu first examined claimant in consultation on August 17, 1977. During 1978, he treated claimant. On March 30, 1978, Dr. Serbu reported that he felt claimant's problem, the disabling back condition, was related to his 1974 injury, but on May 15, 1978, he related claimant's symptomatology more to the 1977 injury than the 1974

---

[2] According to the record, in 1951, claimant had lumbar disc surgery for low back and leg pain at the Veterans' Administration Hospital in Portland. He had good results following this surgery and was able to return to work until his 1974 injury.

injury.[3] Apparently, when Dr. Serbu prepared his March 30, 1978 report he was unaware of the May 23, 1977, incident. On July 31, 1978, the doctor reported, in part:

"When I first saw this gentleman on August 17, 1977 he did relate an injury in 1974, but did not indicate any injury in 1977 nor did he tell me that he saw Dr. Dennis Collis. He indicated that he was seen by Dr. Loescher of the Eugene Hospital and Clinic, Dr. Hirons, and also a psychologist.

"Thus I personally have no knowledge of an injury on May 23, 1977. I would feel once again that this is very difficult to organize chronologically and etiologically. Much of the decision would have to be made by reviewing Dr. Collis's record to decide whether the stated injury of May 23, 1977 aggravated the condition which Dr. Collis had seen previously. If it did not then I would feel that his whole problem is related to his 1974 injury."

---

[3]

"May 15, 1978

"GAB Business Services Inc.
Suite 3
2130 S.W. 5th Avenue
Portland, Oregon 97201

"Re: Dale E. Scofield
File No. 49318-22419

"Gentlemen:

"Mr. Dale E. Scofield was seen in my office again this afternoon at the request of Doctor Hirons.

"Recently his claim was presumably denied. The patient claims that on 5/23/77 he did see Doctor Dennis Collis after injuring his back while unloading some material from a truck. I personally have no record of this injury, but I am certain Doctor Collis would have such a record if this is true. If that statement is true, then obviously one would have to relate his present symptomatology more to the 1977 injury rather than the 1974 injury.

"In any event, he has again developed severe left leg pain. His straight leg raising test is very abnormal, etc.

"I discussed the entire situation with Mr. Scofield and indicated that I could not say whether he would be picked up as an industrial case or not. He claims that in any event he would like to know if anything can be done to help his problem. He is thus scheduled for a myelogram on Monday, May 22, 1978.

"Any further decisions your company may make would be sincerely appreciated by our office.

"Best regards.

"Sincerely,

John Serbu, M.D."

When the above comments by Dr. Serbu are considered in the full context, we do not find the May 15, 1978, letter to be persuasive on the causal relationship involved here.

■ Lastly, we conclude that claimant's claim is not barred either by his alleged failure to give timely notice under ORS 656.265(1), or because there is no legal aggravation claim. Claimant's testimony indicates that he filled out the company's standard industrial accident form and mailed it to the company office with his time sheet. There was some evidence that other documents pertaining to employes were also missing from, or could not be found in, the employer's records. Under Oregon law, there is a disputable presumption that a letter duly directed and mailed was received in the regular course of mail. ORS 41.360(24). The presumption .in this case has not been overcome by other evidence contained in the record.

Furthermore, claimant is not proceeding on an aggravation claim. His claim for compensation is a claim related to chronic problems which arose out of an original claim which was never processed and of which, in our opinion, the employer had notice. The arguments advanced by the dissenting opinion overlook the fact that claimant had problems with his back and leg which bothered him continuously following his 1974 injury; that he had already made an appointment to see his doctor about his back at the time of the May 23, 1977, episode; that he went back to work the day following this incident and kept his appointment with Dr. Collis that day; and that claimant's medical findings were not changed in any way by that incident.

From the foregoing it is manifest that this is not a case for the application of the last injurious exposure rule.

Reversed and remanded with instructions to reinstate the order of the referee.

**VAN HOOMISSEN, J.,** dissenting.

Claimant sustained a compensable back injury in 1974. At that time Wausau was on the risk. In 1977, he again injured his back. National Farmers' was then on the risk. The issue is who should pay, Wausau or National

Farmers'?[1] My review of the record satisfies me the Workers' Compensation Board (Board) correctly determined the 1977 injury independently caused and materially contributed to the worsening of claimant's back condition and that the condition is therefore the responsibility of National Farmers'.

Claimant had underlying back problems before the 1977 incident. Between 1975 and 1977, he was examined several times by his family physician, Dr. Erpelding, who noted in June, 1975, that claimant had pain in his left hip. By July, the pain had lessened, and by August, the hip seemed "much better." Later examinations in 1976 and 1977 make no mention of any hip or back problems.

Claimant was examined in December, 1976, by Dr. Cornog, who reported claimant stated he had achieved a good result from his 1951 back surgery and felt it did not hinder him in his work. Dr. Collis examined claimant later the same day. He noted claimant had had trouble with his back for some 25 years, that he had done well at difficult work until the 1974 injury, and that he had had more back troubles since that time, but had not missed any work. Dr. Collis reported claimant had low back pain and sciatica:

"I think it is secondary to his surgery of 25 years ago, but he also may have contused his sciatic nerve some two years ago."

Dr. Collis prescribed no medication and did not order claimant to restrict his work or other activities.

Claimant was injured on May 23, 1977. As of that date, he had not missed any work because of his back problem. Claimant testified:

"I went to unload a yard light that was in the back [of the truck] and I picked it up to swing it over and set it on the dock and when I got halfway to the dock I just went down like somebody hit me between the ears, I thought, and then in a few minutes I got up * * * I got a sharp pain in my back and down my leg. * * *"

---

[1] Claimant argues this court should affirm the Workers' Compensation Board's finding that his back disability and subsequent surgery are the responsibility of National Farmers', contending the Board correctly determined that the injury of May 23, 1977, independently caused and materially contributed to the worsening of his back condition.

Claimant saw Dr. Collis on May 24, the day following his new injury. At that time he indicated his back "is about the same over the last six months, except for an injury yesterday of twisting." About four weeks later, he was examined by Dr. Hirons, who reported claimant mentioned his back pain had bothered him on and off ever since the 1974 injury, but that "in the last month it has gotten significantly worse" and that claimant "had some aggravation of this injury leading to his visits with us starting in June, 1977, and going on from there." In August, 1977, claimant was referred to Dr. Serbu, a neurosurgeon, who examined and treated him several times over the next two years. In May, 1978, Dr. Serbu reported that if the claimant's account of his May, 1977, injury was true:

"* * * [T]hen obviously one would have to relate his present symptomatology more to the 1977 injury rather than the 1974 injury."

The test in successive injury cases is whether the most recent incident contributes independently or even slightly to the causation of the disabling condition. *Smith v. Ed's Pancake House,* 27 Or App 361, 556 P2d 158 (1976). If it does, under the last injurious exposure rule, full liability is placed upon the insurer covering that risk, in this case National Farmers'.

The medical evidence and claimant's own statements to his treating physicians satisfy me that his underlying back condition had not worsened to such a degree by May, 1977, that his later disability would have occurred regardless of the lifting of a portable yard light weighing 25 to 30 pounds from a truck and that this lifting merely precipitated what was going to happen anyway in a very short time. The severity of pain suffered, the strain and difficulty of the lifting, and the greater frequency of claimant's complaints and treatments for the back problem show that he suffered a new injury in 1977.

Claimant testified that he was on the ground for what "seemed like quite a while, but it probably was only a minute or so."

"Q  Now, on May 23, 1977, you described an incident carrying something and you turned and you had immediate pain in your low back. I think you said it was so bad it knocked you to the ground?

"A   Right.

"Q   And you had never had pain like that before?

"A   Not quite like that."

Although feeling somewhat better the next day, he still had pain down his legs and went to see Dr. Collis.

Not only was the pain severe and unusual, but the lifting incident itself was a significant traumatic incident. The referee observed:

"Under normal circumstances, I do not believe that a person with an otherwise 'normal back' or 'good back' would receive an injury to the back while carrying an object weighing only 25 to 30 pounds."

The referee misunderstood the issue, *i.e.,* whether the incident contributed independently or even slightly to a worsening of the underlying condition. If it did, the incident is treated as a new injury. *Smith v. Ed's Pancake House, supra.*

The key to deciding responsibility under the last injurious exposure rule is to determine when and why the condition became *disabling.* Where a subsequent injury contributes independently to a claimant's disability, the first injury is superceded and the later insurer is liable for the resulting disability. *Gilroy v. General Distributors,* 35 Or App 361, 367, 582 P2d 428 (1978); *Kolar v. B & C Contractors,* 36 Or App 65, 71, 583 P2d 562 (1978).

During the nearly three-year period between August, 1974, and May, 1977, claimant missed no work because of his back problem, did not attempt to change to a less strenuous job, did not otherwise appear to restrict his activities significantly, was treated by a physician particularly for the back problem only one time, and was apparently not given any medication for the problem. Following the May, 1977, incident claimant's low back problem continually worsened, resulting finally in a lumbar laminectomy in May, 1978, and in his present disability.

The evidence demonstrates the worsening of claimant's underlying back problem was independently caused by the 1977 lifting and twisting incident. This court should affirm the Board's finding that National Farmers' is liable on the claim.