Argued and submitted November. 15, 1982, reversed and remanded April 13, David Petshow's reconsideration and J. D. Petshow's reconsideration denied June 3, 1983, petitions for review denied January 17, 1984 (296 Or 350)

In the Matter of the Compensation of
David R. Petshow, Claimant.

PETSHOW,
*Petitioner - Cross-Respondent,*

*v.*

PORTLAND BOTTLING COMPANY,
*Respondent - Cross-Petitioner,*

PETSHOW,
*Cross-Respondent.*

(80-08903, 81-00263; CA A24529)

661 P2d 1369

Alan Scott, Portland, argued the cause for petitioner - cross-respondent. On the brief were Gary M. Galton, John M. Pitcher, and Galton, Popick & Scott, Portland.

Katherine H. O'Neil, Portland, argued the cause for respondent - cross-petitioner. With her on the briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Larry Dawson, Portland, argued the cause and filed the brief for cross-respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

This is a workers' compensation case involving successive injuries, a dispute between two insurers as to which is responsible for compensation and an order directing that any future award for permanent partial disability be reduced by the amount of excess benefits for temporary total disability paid by Liberty Mutual Insurance Company (Liberty). Claimant seeks judicial review, and Liberty, one of the insurers, cross-appeals. We review *de novo,* ORS 656.298(6), and reverse.

Claimant injured his left hand on September 7, 1976, while working for Portland Bottling Company. Liberty, the insurer, accepted the claim. In October, 1977, medical treatment involved the removal of a nerve from claimant's left ankle area and grafting of the nerve into the injured hand. Claimant experienced difficulty with his leg following the nerve transplant. Another surgery was performed on the leg in December, 1979, but some problems persisted. On July 17, 1980, while working for a new employer, J. D. Petshow (claimant's brother), claimant was helping herd a bull when his Achilles tendon ruptured.

Claimant sought compensation from each employer on the basis that his condition was either a new injury or an aggravation of the original injury. Liberty commenced payment of temporary total disability (TTD). Farm Bureau Insurance Co. (Farm Bureau), the insurer for J. D. Petshow, did not accept or deny the claim and made no TTD payments. *See* ORS 656.262(6) (60 days to accept or deny); 656.262(4) (14 days to begin paying compensation after notice or knowledge of claim). On September 30, 1980, claimant requested a hearing concerning Farm Bureau's failure and sought compensation, penalties and attorney fees.

On November 6, 1980, Farm Bureau made its first payment for TTD or "interim compensation" covering the period roughly from the time of the injury to that date. Farm Bureau then sought a designation pursuant to ORS 656.307 as to which insurer should pay compensation. On January 5, 1981, the Compliance Division of the Workers' Compensation Department designated Farm Bureau the "interim" paying party and "referred * * * the issue of

responsibility, including any necessary and monetary adjustments between the parties," to the Hearings Division of the Board. On January 9, 1981, claimant filed a request for hearing on his aggravation claim against Liberty. On January 26, Liberty denied the claim, and on February 26, Farm Bureau denied the new injury claim.

The referee found claimant's condition to be an aggravation for which Liberty was responsible. He also found that Farm Bureau had neglected its statutory duty to pay "interim compensation," ordered that Farm Bureau pay compensation for the period of July 17 through December 26, 1980, and assessed a 25 percent penalty. He ordered that Liberty receive an offset of the amount of TTD that Liberty had paid between July 17 and December 26 against any eventual award of permanent partial disability.[1] On July 17, 1981, the referee issued an order on reconsideration declaring that he had jurisdiction to order the TTD offset against claimant's future disability award. On review, the Board affirmed the referee.

Claimant contends that the Hearings Division and the Board lack "subject matter jurisdiction" at this stage of the claim to order that Liberty can offset TTD against any future award of permanent disability. We do not agree.

The Board and its Hearings Division are authorized to decide disputes and controversies involving claims. ORS 656.708(3); 656.726(2). The Board is authorized to determine those matters concerning a claim in which "a worker's right to receive compensation, or the amount thereof, are directly in issue." ORS 656.704(3). The central issue before the referee was whether the claim was compensable as an aggravation claim or a new injury. Both insurers had denied compensation, and one had sought an offset against claimant's future disability award. Because these questions were controversies involving claimant's "right to compensation [and] the amount thereof," the referee and the Board were acting within their authority to decide "claims." *See SAIF v. Broadway Cab,* 52 Or App 689, 693 n 2, 629 P2d 829, *rev den* 291 Or 662 (1981).

---

[1] The referee also ordered Liberty to reimburse Farm Bureau for any TTD it may have paid after December 27, 1980. *But see Renolds-Croft v. Morrison,* 55 Or App 487, 638 P2d 495 (1982).

Ordinarily, a credit or offset against a final disability award is initiated by the Evaluation Division when issuing a determination order. ORS 656.268(4).[2] The offset in this case was ordered in the early stages of the claim before claimant had become medically stationary and a determination order could be issued. Nevertheless, the issue of the offset was fully contested at the hearing, and claimant was a participant in those proceedings. The offset involved the extent of compensation and was, therefore, an issue "concerning a claim" within the authority of the Board and referee to decide. *See* ORS 656.708(3); 656.726(2); 656.704(3). We find no error.

Claimant argues that each insurer had an independent statutory obligation to make what may be generally termed "time loss" payments. Claimant emphasizes a distinction between Liberty's temporary total disablity payments (TTD) made as part of an accepted claim and Farm Bureau's "interim compensation" payments made while Farm Bureau remained undecided whether to accept or deny the claim. *See Jones v. Emanuel Hospital,* 280 Or 147, 570 P2d 70 (1977) (TTD termed "interim compensation"). Claimant concludes that he is entitled to "time loss" payments by both insurers during the same time period.

■       Each insurer has the statutory obligation to make "time loss" payments when claims are filed against each

---

[2] ORS 656.268(4) provides:

"Within 10 working days after the Evaluation Division receives the medical and vocational reports relating to a disabling injury, the claim shall be examined and further compensation, including permanent disability award, if any, determined under the director's supervision. If necessary the Evaluation Division may require additional medical or other information with respect to the claim, and may postpone the determination for not more than 65 additional days. *Any determination under this subsection may include necessary adjustments in compensation paid or payable prior to the determination, including* disallowance of permanent disability payments prematurely made, *crediting temporary disability payments against permanent disability awards* and payment of temporary disability payments which were payable but not paid. The Evaluation Division shall reconsider determinations made pursuant to this subsection whenever one of the parties makes request therefor and presents medical information regarding the claim that was not available at the time the original determination was made. However, any such request for reconsideration must be made prior to the time a request for hearing is made pursuant to ORS 656.283. The time from request for reconsideration until decision on reconsideration shall not be counted in any limitation on the time allowed for requesting a hearing pursuant to ORS 656.283." (Emphasis supplied.)

insurer and neither has denied compensation. ORS 656.262 (responsibility to pay compensation); *Jones v. Emanuel Hospital, supra* (claimant entitled to time loss when insurer has not yet denied claim even if claim later found noncompensable.) For purposes of determining whether the "time loss" payments were excessive, however, there is little difference between TTD on an accepted claim and "interim compensation" paid by an undecided insurer. Both are derived from the same statute: ORS 656.210. That section entitles an injured worker to a fixed percentage of the workers' lost wages according to a formula. The worker is not entitled to recover double the statutory sums simply due to uncertainty as to which insurer is responsible for compensation. ORS 656.210(1) provides in part:

> "When the total disability is only temporary, the workers shall receive during the period of that total disability compensation *equal to 66 2/3 percent of wages, but not more than 100 percent of the average weekly wage* nor less than the amount of 90 percent of wages a week or the amount of $50 a week, whichever amount is lesser. * * *" (Emphasis supplied.)

*See Jackson v. SAIF,* 7 Or App 109, 117, 490 P2d 507 (1971).[3] Claimant's retention of "time loss" payments from both insurers for the same time period would result in compensation greater than that provided by ORS 656.210(1). It was not error, therefore, to require that an eventual determination order awarding permanent partial disability include an offset for excessive TTD benefits. ORS 656.268(4).

Liberty cross-appeals, challenging the Board's determination that claimant's ruptured tendon is an aggravation of the original injury. Liberty contends that the worsened condition is a new injury, for which Farm Bureau

---

[3] In *Jackson v. SAIF, supra,* we said:

> "Under the unique facts of this case, the claimant sustained two separate injuries, each of which resulted in temporary total disability, covered by different insurers. The Workmen's Compensation Law establishes the amounts payable for temporary total disability in ORS 656.210. The statute not only sets out how much the employer has to pay, *but it also sets out how much the workman can receive." Jackson v. SAIF, supra,* 7 Or App at 117. (Emphasis supplied.)

We then concluded that it was proper to split the responsibility equally between the insurers.

would be responsible, because the bull-herding incident at least "slightly contributed" to the worsened condition. Liberty emphasizes that claimant had been helping to herd the bull for twenty to thirty minutes and was moving over uneven ground when the tendon ruptured.

Farm Bureau contends that the ruptured tendon was only a direct and natural progression of the first injury and that, therefore, Liberty is responsible. Farm Bureau relies on a report written by Dr. North, claimant's treating physician, the day after the second injury:

> "The patient felt a snap in the calf that sounded like a bullet going off when he was twisting and putting weight on his leg. * * * The patient has previously had nerve grafting with seral [sic] nerve and also developed some nodules on his tendon which have been excised previously. * * *

> "COMMENT: The patient's Achilles tendon has ruptured and was probably predestined to this by his previous industrial injury and nerve grafting with Achilles nodules. This weakness in the tendon has now contributed significantly to the likelihood of his reason for tendon ruptured [sic] and therefore I feel it should be covered under the industrial claim. * * *"

A hospital record made at the same time indicated that the accident happened while claimant was "at home walking." When viewed in context, it becomes apparent that the doctor was concerned with compensability, not with responsibility.[4] He stressed the part that the prior injury and the surgeries played in claimant's current condition, but he did not address the question whether the second injury *also* contributed to the disabling condition.

In *Smith v. Ed's Pancake House*, 27 Or App 361, 364-65, 556 P2d 158 (1976) this court declared:

> "The 'last injurious exposure' rule in successive-injury cases places full liability upon the carrier covering the risk

---

[4] The doctor stated that the prior surgery resulted in a "weakness" in the tendon that "contributed significantly" to the "likelihood" of tendon rupture and, therefore, the injury should be "covered." We understand the statement to indicate that claimant was *predisposed* to a tendon rupture but not that the rupture was necessarily inevitable. The doctor's emphasis on the role of the prior surgery for purpose of compensability does not resolve the question of the causative effect of the second injury for purposes of responsibility.

at the time of the most recent injury that bears a causal relation to the disability.

"* * * * *

"* * * [I]f the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and *even if the prior injury contributed the major part to the final condition.* * * *" (Emphasis supplied.)

■ We conclude that claimant's second injury contributed independently to cause the rupture of the tendon. Prior to July 17, 1980, claimant's symptoms did not include a ruptured Achilles tendon. On July 17th, however, claimant moved rapidly over uneven ground; he was "twisting and putting weight on his leg" when he suffered a sudden rupture of the tendon. The physical stress of the effort was an actual and independent contribution to the ruptured tendon,[5] and therefore Farm Bureau is responsible for compensation.[6] *Gilroy v. General Distributors,* 35 Or App 361, 582 P2d 428 (1978);[7] *Smith v. Ed's Pancake House, supra; see also Boise Cascade Corp. v. Starbuck,* 61 Or App 631, 639, 659 P2d 424 (1983).

Liberty also contends that the Board erred in affirming the referee's order that Liberty pay claimant an attorney fee. Liberty argues that the award was excessive

---

[5] This case is distinguishable from those cases in which subsequent exertion or stress merely causes a recurrence of prior symptoms, such as a recurrence of back strain. *See, e.g., Calder v. Hughes & Ladd,* 23 Or App 66, 541 P2d 152 (1975). In the present case the ruptured tendon was not a preexisting condition; neither was it an inevitable result of the prior surgeries.

[6] This finding may warrant restructuring the offset against claimant's eventual permanent partial disability award. For example, Farm Bureau now might receive the offset and Liberty be reimbursed for its excess time loss payments. In any event, Liberty's reimbursement should be accomplished consistent with *Renolds-Croft v. Morrison, supra* n 1.

[7] In *Gilroy,* the claimant suffered a compensable shoulder injury in March, 1974. His shoulder dislocated repeatedly over the next two years. On April 21, 1976, he fell on a flight of stairs at work and reinjured the shoulder. The claimant testified that for the first time his fingers started to swell and he suffered more pain than before. A treating physician attributed most of the condition to the initial injury but also credited the fall as contributing. The physician said that the claimant's fall caused additional permanent damage. This court held that, although the fall was not the sole cause of the claimant's condition, the fall was a contributing factor and was thus a new injury for which the second carrier was responsible. *Gilroy v. General Distributors, supra,* 35 Or App at 363-67.

for an "ORS 656.307 proceeding." In light of our determination that Farm Bureau is the responsible insurer, the order awarding fees is reversed.

Reversed and remanded to the Board for further proceedings consistent with this opinion.